FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 MAY 21  PM 1:45

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| DEANNA WILLIAMS | ) |
|             Plaintiff, | ) |
| vs. | )   CV 96-L-1729-S |
| BORDEN, INC., a corporation, organized under the laws of the State of New Jersey; and TOTAL FAMILY PROTECTION PLAN, an employee health benefit plan within the meaning of ERISA, | ) ) ) ) ) ) ) |
|             Defendants. | ) |

ENTERED
MAY 2 1 1997

### FINDINGS OF FACT
### AND
### CONCLUSIONS OF LAW

This cause came on for trial before this court, without the intervention of a jury, on May 6, 1997 upon the pleadings, the order of pretrial conference, the evidence and exhibits, and the arguments of counsel. The court enters the following findings of fact and conclusions of law:

### Findings of Fact

1. During typical business days in both 1991 and 1992, Borden, Inc. ("Borden") employed twenty or more employees.

2. Perry Vines ("Vines") was employed by Bama, a subsidiary of Borden, Inc. As an employee of Bama, Vines was covered under the Borden Comprehensive Medical Plan.

25

3. While covered under the Borden Comprehensive Medical Plan, Vines was married to Deanna Williams ("Williams"). As the spouse of an employee, Williams was also covered under this medical plan.

4. On April 14, 1992, Williams and Vines divorced. On May 28, 1992, Vines filled out a T-402 form so that Williams' coverage under the Borden medical plan would be terminated. Borden ended Williams' coverage under the medical plan but failed to inform her of her right to elect continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1988 ("COBRA").

5. Beginning in March 1992, Williams complained to her doctor of pelvic pain and bleeding. In May 1992, she began taking medicine for the condition. By July 1992, Williams' doctor had advised her that she needed a laparoscopy.

6. In June 1992, Williams secured a job with AmSouth Bank. As an employee, she was eligible to participate in the AmSouth medical plan. Her coverage began in June 1992. However, the plan required that she wait nine months before preexisting conditions would be covered under the plan.

7. In October 1992, Williams quit her job at AmSouth and remarried. Although she was eligible to obtain medical coverage under the plan provided by her husband's employer, that plan also had a nine-month waiting period for preexisting conditions. Thus Williams elected COBRA continuation coverage under the AmSouth plan.

8. Because Williams' health coverage at AmSouth began in

June 1992, AmSouth's nine month preexisting condition exclusion ended no later than March 31, 1993. Williams' laparoscopy was not performed until April 27, 1993.

9.   Williams is currently covered under a medical plan provided by her husband's employer.   She does not desire continuation coverage through Borden.

10.   Borden did not intend that the T-402 form which Vines filled out would serve as notification of a COBRA qualifying event. The T-402 form was developed prior to the passage of COBRA solely so that employees could modify who was participating in the plan for payroll deduction purposes.

11.   Borden relied on the Status Change Form instead of the T-402 form to notify it of qualifying events.   Further, COBRA Reconciliation Forms were used to ensure that all Status Change Forms had been acted upon by Borden.  Borden made a mistake in judgment when it failed to realize that the T-402 form served as notification of a qualifying event.   Borden did not act intentionally or in bad faith when it made this mistake in judgment.

12.   Borden made a good-faith attempt to comply with COBRA by centralizing in one location all responsibility for COBRA; prior to 1988, there were over 200 locations, each with responsibility for implementing the requirements of COBRA.   Employees of the centralized COBRA office were regularly sent to conferences to keep abreast of recent developments important to the implementation of COBRA.

13. On October 15, 1993, the Internal Revenue Service determined that Borden's health plan complied with COBRA.

14. In 1994, Borden changed its procedures so that a T-402 form was considered to be notification of a qualifying event sufficient to trigger notice of COBRA rights. This change came about in response to litigation filed against Borden in Kansas City, Missouri by four persons who had not been made aware of their rights under COBRA. Borden paid $35,000 to these four persons, as well as $100,000 in attorney's fees.

## Conclusions of Law

1. Because Borden employed twenty or more employees during typical business days in both 1991 and 1992, Borden is required to comply with COBRA. See 29 U.S.C. § 1161.

2. Borden is an employer which maintained a group health plan pursuant to COBRA. See 29 U.S.C. § 1167(1) & (4). Vines was a covered employee under the Borden group health plan. See 29 U.S.C. § 1167(2). As the spouse of Vines, Williams was a qualified beneficiary pursuant to COBRA. See 29 U.S.C. § 1167(3)(A)(i).

3. Williams' divorce on April 14, 1992 was a qualifying event pursuant to COBRA. See 29 U.S.C. § 1163(3). She was entitled to continuation coverage lasting thirty-six months from the date of the qualifying event. See 29 U.S.C. § 1162(2)(A)(iv).

4. On May 28, 1992, within sixty days of Williams' divorce, Vines notified Borden that the divorce had occurred. See 29 U.S.C. § 1166(a)(3).

5. Borden failed to notify Williams of her right to elect continuation coverage as it was required to do within fourteen days of the date on which it was notified of the divorce, that is, sometime between May 29 and June 11, 1992. See 29 U.S.C. §§ 1161(a) & 1166(c).

6. By failing to meet the requirements of 29 U.S.C. § 1166(c), Borden may, in the court's discretion, be liable to Williams in the amount of up to $100 a day from the date of such failure. See 29 U.S.C. § 1132(c)(1).

7. The decision to grant relief under 29 U.S.C. § 1132(c)(1) is within the discretion of the trial judge. Curry v. Contract Fabricators Inc. Profit Sharing Plan, 891 F.2d 842, 847 (11th Cir. 1990); Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc., 637 F.2d 357, 362 (5th Cir. 1981), cert. denied, 454 U.S. 836 (1981). A showing of prejudice or monetary loss are not prerequisites to an award of civil penalties but are factors to be considered. Moothart v. Bell, 21 F.3d 1499, 1506 (10th Cir. 1994); Curry, 891 F.2d at 847. Indeed, rather than compensate the plaintiff, the purpose of § 1132(c)(1) is to punish the intransigent administrator and to teach ERISA fiduciaries a lesson. Curry, 891 F.2d at 847.

8. When Borden failed to inform Williams of her COBRA rights, she was injured because the laproscopy could not be performed until April 27, 1993. Borden did not act in bad faith when it neglected to send Williams notice of her rights under COBRA. When Borden paid $135,000 to settle the Kansas City

5

litigation of the same issue presented in this case, it was punished for its failure to comply with COBRA so that Borden modified its procedures. The IRS has found Borden to be in compliance with COBRA.

9. Plaintiff is entitled to ten dollars for each of the 294 days beginning on June 11, 1992 (the first day that Borden is subject to the § 1132(c)(1) penalty) and ending on March 31, 1993 (the last date on which the preexisting condition exclusion under Williams' AmSouth health plan could have ended).

10. Plaintiff has failed to prove that she is entitled to restoration of thirty-six months of COBRA coverage, additional conversion coverage authorized by COBRA, or equitable relief for breach of fiduciary duty.

11. If plaintiff intends to make a motion for an award of attorney's fees under this court's Local Rule 54.1, she should include with the motion a list of expenses and attorney's fees associated with the pretrial conferences held December 10, 1996 and April 9, 1997, the motion docket on February 21, 1997, and the trial held April 6, 1997.

12. A formal judgment for plaintiff in the amount of two thousand nine hundred forty dollars ($2940.00) will be entered separately.

DONE this 21st day of May 1997.

_Seybourn H. Lynne_
SENIOR JUDGE